UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

HOWARD J. LITTLE, JR., )
 )
       Plaintiff )
 )
v. ) No. 2:13-cv-365-GZS
 )
CAROLYN W. COLVIN, )
*Acting Commissioner of Social Security,* )
 )
       Defendant )

### *REPORT AND RECOMMENDED DECISION*[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff contends that the administrative law judge erred in dismissing the psychological expert scheduled to testify at his hearing, made a flawed analysis of whether his impairments met or equaled the criteria of Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"), failed to call a vocational expert who was present at his hearing, arrived at a determination of his mental residual functional capacity ("RFC") that is unsupported by substantial evidence, made a flawed credibility determination, and failed to make a function-by-function analysis of his mental RFC. *See*

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on September 12, 2014, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

Plaintiff's Statement of Errors ("Statement of Errors") (ECF No. 18) at 3-19.[2] I find no error and, accordingly, recommend that the decision be affirmed.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff meets the insured status requirements of the Social Security Act through December 31, 2015, Finding 1, Record at 17; that he had severe impairments of an organic mental disorder/history of attention-deficit hyperactivity disorder, an affective disorder/mood disorder, not otherwise specified, an anxiety-related disorder/anxiety, not otherwise specified, and a personality disorder/borderline personality disorder, Finding 3, *id*.; that he did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the Listings, Finding 4, *id*. at 18; that he retained the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations: he could understand and remember simple instructions, execute simple tasks on a consistent schedule to complete a normal workday and workweek, interact with coworkers and supervisors but not with the general public, and adapt to occasional routine changes in the workplace, Finding 5, *id*. at 20; that, considering his age (34 years old, defined as a younger individual, on his alleged disability onset date, October 15, 2010), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id*. at 25; and that he, therefore, was not disabled from October 15, 2010, through the date of the decision,

---

[2] In his statement of errors, the plaintiff also complained that the administrative law judge erred in canceling the appearance of medical expert Peter B. Webber, M.D., who was scheduled to testify regarding his physical impairment(s), and in relying on an opinion of an agency nonexamining consultant, Robert Hughes, M.D., with respect to his physical RFC. *See* Statement of Errors at 3-6, 13-14. However, at oral argument, his counsel stated that he did not challenge the finding that he had no severe physical impairment(s).

November 2, 2012, Finding 11, *id*. at 26. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Cancellation of Psychological Expert's Appearance

The plaintiff first contends that the administrative law judge abused his discretion and violated the plaintiff's due process rights when, without prior notice, he canceled the scheduled appearance at hearing of Ira H. Hymoff, Ph.D. *See* Statement of Errors at 3-6.

The plaintiff acknowledges that this court has held that the decision of whether to call a medical or psychological expert at hearing is within the commissioner's discretion, and the failure to do so does not provide a basis for remand. *See id*. at 5 (citing *Allaire v. Astrue*, Civil No. 08-

375-P-H, 2009 WL 3336107 (D. Me. Oct. 13, 2009) (rec. dec, *aff'd* Nov. 10, 2009)). However, the plaintiff distinguishes *Allaire* on the basis that, here, the administrative law judge made the knowing decision, pursuant to the Social Security Administration, Hearings, Appeals, and Litigation Law Manual (HALLEX), to call Dr. Hymoff, indicating that he considered his assistance necessary, but then canceled his appearance without notice to the plaintiff. *See id*. at 5-6. He asserts that Dr. Hymoff's assistance was in fact necessary because the administrative law judge improperly assessed raw medical evidence in determining his mental RFC. *See id*. at 4.

However, as the commissioner notes, *see* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 19) at 18, this court rejected a similar argument in *Hallock v. Astrue*, No. 2:10-cv-374-DBH, 2011 WL 4458978 (D. Me. Sept. 23, 2011) (rec. dec., *aff'd* Oct. 12, 2011), holding that an administrative law judge did not err in dismissing a medical expert who had been asked to attend the claimant's hearing. *See Hallock*, 2011 WL 4458978, at *2 ("I begin with bedrock Social Security law: an administrative law judge is never required to consult a medical expert or to 'allow' him or her to testify. The plaintiff's argument is contrary to existing Social Security law.") (citations omitted). The same is axiomatic here.

Nor did the cancellation of Dr. Hymoff's scheduled appearance without prior notice to the plaintiff offend his due process rights. As the commissioner argues, the plaintiff was not deprived "'of an opportunity to be heard at a meaningful time and in a meaningful manner,' which is the essence of a due process claim." Opposition at 19 (quoting *Shorey v. Astrue*, No. 1:11-cv-414-JAW, 2012 WL 3475790, at *8 (D. Me. July 13, 2012) (rec. dec., *aff'd* Aug. 14, 2012)). In any event, even assuming *arguendo* that the plaintiff's due process rights were violated, his counsel acknowledged at oral argument that he cannot demonstrate any resulting prejudice because he does not know what Dr. Hymoff might have said, if called. As the commissioner notes, this is fatal to

a bid for remand on due process grounds. *See id.* at 18-19; *see also, e.g., Lewis v. Astrue*, No. 06-121-B-W, 2007 WL 2021912, at *5 (D. Me. July 11, 2007) (rec. dec., *aff'd* Aug. 15, 2007) (remand is not warranted on basis of a due process violation unless resultant prejudice is shown).

### B. Analysis of Listings

The plaintiff next contends that the administrative law judge wrongly determined that his mental impairments did not meet or equal the criteria of applicable Listings when, in the absence of Dr. Hymoff's assistance, he rejected evidence from treating counselor James E. Douglas, LCPC, including a July 24, 2012, mental RFC opinion, that he asserts was sufficient to demonstrate that those criteria were met. *See* Statement of Errors at 7. As the commissioner rejoins, *see* Opposition at 7, the administrative law judge explained in detail why he determined that the plaintiff had only a mild restriction in activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace – levels of impairment that are insufficient to meet the Listings, *see* Record at 18-19. Yet, the plaintiff fails to challenge any of those details. *See* Statement of Errors at 7. This is fatal to his bid for remand on this basis. In any event, as explained below, the administrative law judge supportably accorded little weight to Douglas's mental RFC opinion.

### C. Failure To Call Vocational Expert

The plaintiff next argues that the administrative law judge denied him the right to a full and fair hearing when he failed to take testimony from a vocational expert who was present for his hearing. *See* Statement of Errors at 7-8. He contends that he was denied an opportunity to question the vocational expert regarding his vocational history, which he asserts is consistent with a finding of disability because he worked for more than 70 different employers between 1997 and 2010. *See id.* at 8. He adds that the medical evidence supports a finding that, in any job, he would inevitably

5

be off-task, have more than a tolerable number of absences, come into conflict with authority figures, and act out in ways that no supervisor or company would tolerate. *See id.*

At the commissioner notes, this argument falls short for the same reasons as the plaintiff's parallel argument that the administrative law judge erred in canceling the appearance of Dr. Hymoff. *See* Opposition at 19. As in the case of medical and psychological experts, the decision of whether to call a vocational expert is within the administrative law judge's discretion. *See, e.g., Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). Even assuming an abuse of discretion or a violation of due process, the plaintiff merely speculates that the vocational expert would have testified that his vocational history is consistent with a finding of disability; that speculation falls short of demonstrating resulting prejudice.

In any event, as the commissioner reasons, *see* Opposition at 19, this argument is more in the nature of a challenge to the administrative law judge's mental RFC finding than to his decision not to call the vocational expert present at hearing. For the reasons discussed below, that challenge fails.

### D. Mental RFC Determination

The plaintiff's next contention, as his counsel acknowledged at oral argument, is his central one: that the administrative law judge's mental RFC determination is unsupported by substantial evidence, specifically, in the form of a valid expert RFC assessment. *See* Statement of Errors at 8-14. He argues that the administrative law judge erred in according great weight to the opinions of two agency nonexamining consultants, Chang-Wuk Kang, M.D., and Mary A. Burkhart, Ph.D., which he contends cannot serve as substantial evidence of his mental RFC, and little weight to the opinion of counselor Douglas. *See id.* For the reasons that follow, I find no basis on which to disturb the administrative law judge's weighing of competing expert mental RFC opinions.

6

### 1. Weight Given to Agency Nonexamining Consultants' Opinions

The administrative law judge's mental RFC opinion is directly supported by the assessments of Drs. Kang and Burkhart. *Compare* Finding 5, Record at 10 *with id*. at 76-77, 103-04. The administrative law judge explained that he gave their opinions great weight because they were "thoroughly familiar with the Social Security Administration disability standard[,]" they "based their opinions on a review of the medical evidence of record[,]" and "[t]heir opinions are consistent with this record and with the evidence of record as a whole." *Id*. at 24.

"An administrative law judge has discretion to resolve conflicts among expert opinions by according great weight to the opinion of a nonexamining state agency physician." *Gilson v. Colvin,* No. 1:12-cv-376–GZS, 2013 WL 5674359, at *3 (D. Me. Oct. 17, 2013). *See also, e.g., Shaw v. Secretary of Health & Human Servs.,* No. 93-2173, 1994 WL 251000, at *4 (1st Cir. June 9, 1994) ("The regulations do not require a particular view of the evidence, but leave ambiguities and inconsistencies to be sifted and weighed by the ALJ [administrative law judge] . . . . While generic deference is reserved for treating source opinions, the regulations also presuppose that nontreating, nonexamining sources may override treating [or examining] doctor opinions, provided there is support for the result in the record."); *Rodriguez,* 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts.").

"[T]he amount of weight that can properly be given the conclusions of non-testifying, non examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert." *Rose v. Shalala,* 34 F.3d 13, 18 (1st Cir. 1994) (citations and internal quotation marks omitted). "In some cases, written reports submitted by nontestifying,

nonexamining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule.") (citations and internal quotation marks omitted).  This court has noted that "there is no bright-line test of when reliance on a nonexamining expert consultant is permissible in determining a claimant's physical or mental RFC," although "[f]actors to be considered include the completeness of the consultant's review of the full record and whether portions of the record unseen by the consultant reflect material change or are merely cumulative or consistent with the preexisting record and/or contain evidence supportably dismissed or minimized by the administrative law judge." *Brackett v. Astrue,* No. 2:10-cv-24-DBH, 2010 WL 5467254, at *5 (D. Me. Dec. 29, 2010) (rec. dec., *aff'd* Jan. 19, 2011) (citations omitted).

The plaintiff argues that the Kang report, dated March 29, 2011, and the Burkhart report, dated July 28, 2011, cannot stand as substantial evidence of his mental RFC because the consultants apparently were not provided full access to the mental health record and because too much time elapsed between the issuance of their opinions and the plaintiff's hearing (more than a year) and the hearing and the issuance of the decision (an additional three months).  *See* Statement of Errors at 12-14.

The plaintiff points out that, in a section of the Kang report titled "Findings of Fact and Analysis of Evidence," the reviewer noted, "Unfortunately my prior MENTAL FOFAE [presumably, Findings of Fact and Analysis of Evidence] was deleted."  Statement of Errors at 12, Record at 72.  He adds that the reviewer then summarized only one medical record, a February 7, 2011, note by a provider at Positive Health Care who was not treating the plaintiff for mental health issues but touched on his mental health.  *See* Statement of Errors at 12-13; Record at 72.  He acknowledges that, in a section titled "Evidence of Record," someone noted that Joseph Fishel, M.D., had performed a February 14, 2011, psychiatric evaluation of the plaintiff.  *See* Statement

8

of Errors at 13; Record at 71. However, he contends that there is no indication that Dr. Kang reviewed Dr. Fishel's observations or findings. *See* Statement of Errors at 13. He argues that "[a] missing summary of evidence cannot be found to be substantial evidence[.]" *Id*. His counsel also underscored, at oral argument, that Dr. Kang seemingly relied on only two notes, the February 7, 2011, Positive Health Care note, which was not even created in the context of mental health treatment, and the February 14, 2011, note of Dr. Fishel. He contended that two treatment notes, one of which is not even from a mental health provider, cannot form the basis of a mental RFC opinion. He added that Dr. Burkhart based her mental RFC assessment on the same two notes. *See id*. at 13; Record at 100.[3]

Nonetheless, the plaintiff fails to identify any specific evidence bearing on his mental health that was missing from the file available to Drs. Kang or Burkhart or to cite any authority for the proposition that it was error for the administrative law judge to rely on those opinions because they were based on too scanty an underlying record. As counsel for the commissioner noted at oral argument, it is within the province of an expert to state that there is insufficient evidence to offer an opinion, *see, e.g., Stanley v. Colvin*, Civil No. 1:13-cv-186-DBH, 2014 WL 1767103, at *2 (D. Me. Apr. 29, 2014) (noting that three of five experts tasked to assess the severity of the plaintiff's mental impairments indicated that they had insufficient evidence to do so), but neither Dr. Kang nor Dr. Burkhart did so here.

As the commissioner suggests, *see* Opposition at 8-9, the mere fact that more than a year elapsed between the issuance of the Kang and Burkhart reports and the issuance of the decision is

---

[3] The plaintiff overlooked the fact that Dr. Burkhart discussed a psychiatric treatment note dated April 20, 2011, by Ian Brown, PMHNP-BC, in which the plaintiff reported that medication was helping with symptoms including sleep, anxiety, agoraphobia, and mood lability and that his MSE, or mental status examination, was WNL, or within normal limits. *See* Record at 102, 543-44. This indicates that records that became available subsequent to Dr. Kang's review were provided to Dr. Burkhart and taken into consideration by her.

9

of no import. What matters is whether any later-submitted evidence was material, calling their conclusions into doubt. *See, e.g., Brown v. Barnhart*, No. 06-22-B-W, 2006 WL 3519308, at *3 (D. Me. Dec. 6, 2006) (rec. dec., *aff'd* Dec. 28, 2006). The plaintiff identifies no such evidence; thus, he fails to carry his burden of demonstrating that remand is warranted on this basis.[4]

## 2. Weight Given to Treating Source Opinion

Treating counselor Douglas completed a mental health questionnaire on July 24, 2012, in which he indicated, *inter alia*, that the plaintiff had marked restriction of activities of daily living, marked difficulties in maintaining social functioning, and marked deficiencies of concentration, persistence, or pace, that he probably could not consistently complete a typical eight-hour workday or 40-hour workweek without interruptions from psychologically based symptoms, and would be absent from work more than four days per month as a result of his symptoms, if he attempted regular employment. *See* Record at 658-59. The administrative law judge stated that he gave little weight to the Douglas opinion for the following reasons:

> Mr. Douglas treated the [plaintiff] for approximately four months and his treatment notes focus primarily on the [plaintiff's] relationship with his partner, his inability to trust others, and his problem with low self-esteem. In addition, Mr. Douglas' treatment notes do not assess the [plaintiff's] mental status, except for noting that he is not a threat to himself, or others. Mr. Douglas during his initial evaluation of the [plaintiff] noted that his mental assessment was the same as [the assessment of Sandra Jones, LCPC] when the [plaintiff] initially presented to Sweetser. However, Ms. Jones' assessment does not contain a mental status examination either, and instead relies primarily on the [plaintiff's] subjective report. Moreover, Mr. Douglas' opinion is inconsistent with his own notes, including the [plaintiff's] report that, while his partner was in the hospital, everything to do around the house is falling onto his shoulders, and that he is having positive thoughts and feelings about starting a small home decorating business. Finally, mental status examinations from other treating providers during this period, including [Constance W. Jordan, MSN, ANP, PMHNP] are inconsistent with Mr. Douglas' dire assessment.

---

[4] The plaintiff did contend, in the context of arguing that the administrative law judge erred in giving little weight to the Douglas opinion, that the evidence of record was consistent with Douglas's opinion of marked mental restrictions. *See* Statement of Errors at 9-10, 12. This evidence includes treatment notes that were unavailable to Drs. Kang and Burkhart. However, as discussed above, the administrative law judge supportably rejected that contention.

*Id.* at 24 (citations omitted).

Douglas, a licensed counselor, is not an "acceptable medical source" for purposes of establishing the existence of a medically determinable impairment. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a). However, "[i]n addition to evidence from the acceptable medical sources listed in paragraph (a) . . ., [the commissioner] may also use evidence from other sources to show the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work." *Id*. §§ 404.1513(d), 416.913(d). Social Security Ruling 06-03p ("SSR 06-03p") provides, in relevant part:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-03p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2014), at 333.

The plaintiff contends that the decision to give little weight to the Douglas opinion is unpersuasive and without support and that the administrative law judge substituted his own lay judgment for that of Douglas in rejecting that opinion. *See* Statement of Errors at 9. He argues that the administrative law judge downplayed the significance of his long history of mental impairment, vocational and personal instability, and the disabling symptoms that he detailed to his numerous medical providers, including persistent symptoms of irritability, impulsivity, disturbed sleep, feelings of hopelessness and helplessness, low self-esteem, paranoia, hypervigilance,

flashbacks, mood swings, racing thoughts, poor concentration, and poor short-term memory. *See id*. at 9-10. He adds that Douglas's opinion is well-articulated and supported by his comprehensive notes of 13 counseling sessions, totaling 17.25 hours, commencing on April 12, 2012. *See id*. at 12. He adds that no substantial evidence of record conflicts with Douglas's opinion because the Kang and Burkhart opinions cannot stand as substantial evidence of his mental RFC. *See id*. at 12-14.

However, as the commissioner argues, *see* Opposition at 15-16, the administrative law judge duly considered the Douglas opinion and explained the weight that he gave it, providing sufficient discussion to ensure that the plaintiff or a subsequent reviewer could follow his reasoning. No more was required. In any event, as the commissioner argues in the alternative, *see id*. at 16, the administrative law judge provided rationales that are supported by the record, or represent a reasonable inference from the record, for rejecting the Douglas opinion; for example, that Douglas had been treating the plaintiff for only a relatively short period of time during which he did not perform comprehensive mental status examinations, *see* Record at 638-50; his notes reflect greater functionality than his mental RFC opinion, *see id.*; and the mental status examination results of other treating providers, such as Jordan, do not support the dire level of restrictions that he assessed, *see, e.g., id*. at 636, 651-52, 654.

The administrative law judge did not impermissibly interpret raw medical evidence in drawing those conclusions or in resolving conflicts among the expert mental RFC opinions of record. *See, e.g., Anderson v. Astrue,* No. 1:11-cv-476-DBH, 2012 WL 5256294, at *4 (D. Me. Sept. 27, 2012) (rec. dec., *aff'd* Oct. 23, 2012) ("While an administrative law judge is not competent to assess a claimant's RFC directly from the raw medical evidence unless such assessment entails a common-sense judgment, he or she is perfectly competent to resolve conflicts

in expert opinion evidence regarding RFC by, *inter alia,* judging whether later submitted evidence is material and whether there are discrepancies between a treating source's opinion and his or her underlying progress notes.") (citation and internal quotation marks omitted).

### E. Credibility Determination

The plaintiff next challenges the administrative law judge's negative credibility determination, asserting that the inferences drawn are unreasonable and unsupported by substantial evidence. *See* Statement of Errors at 14-16. This argument, as well, falls short of meriting remand.

"The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." *Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987).

The administrative law judge found the plaintiff "only minimally credible, particularly with respect to his inability to control his anger, which appears to be directed toward his domestic partner." Record at 21 (citations omitted). He detailed a number of reasons for this finding, buttressed by citations to specific record pages. *See id*. at 21-22. As the commissioner contends, *see* Opposition at 11-14, his analysis easily survives the applicable, deferential standard of review, both because the plaintiff does not challenge all relevant credibility findings and because the ones that he does challenge, detailed below, withstand scrutiny. The administrative law judge found, in relevant part, that:

1. <u>The plaintiff's allegation that he could not make change, or had difficulty doing so, was inconsistent with his history of work as a cashier/clerk and his statement in his function report that he was capable of counting change and managing his personal finances</u>. *See* Record at 21. The plaintiff protests that he testified that he had difficulty calculating change from a dollar, not

that he lacked the ability to count coin values. *See* Statement of Errors at 16. However, the administrative law judge reasonably perceived a clash between his testimony and his work experience and statement in his function report.

2. <u>Although the plaintiff testified that he was unreliable in job attendance and performance, there was no evidence reflecting such issues; a treating psychiatrist noted on February 6, 2008, that the plaintiff reported that he did not have an absentee problem and was able to function at work without difficulty; and the plaintiff testified to having no goals, reported to Jones that he was unhappy with his job at Rite Aid, and told Douglas that he did not want to work</u>. *See* Record at 21. The plaintiff asserts that there are no records documenting his conflicts with supervisors and coworkers because he has not worked since his alleged onset date of disability and that his claims are borne out by his documented clashes with his partner and the fact that he worked for at least 70 different employers between 1997 and 2010. *See* Statement of Errors at 14-15. Nonetheless, the administrative law judge reasonably drew the conclusion in view of the cited evidence, and lack of evidence, that the plaintiff's testimony on this point was minimally credible.

3. <u>The plaintiff reported that he required special education classes throughout his elementary and secondary education, but the record evidence revealed that he completed general education classes throughout high school and graduated with a ranking in the middle of his class</u>. *See* Record at 22. The plaintiff protests that the cited records do indicate that he attended multiple special education classes, although they are not specifically designated in that manner but, rather, as "resource" classes. *See* Statement of Errors at 15-16. Yet, the school records do reveal that the plaintiff took a number of non-resource classes and was ranked on graduation in the middle of his class. *See* Record at 323-26.

4.  <u>Although the plaintiff reported that he was unable to perform even basic housekeeping chores, he told Douglas that, while his partner was in the hospital, maintenance of the household fell squarely on his shoulders</u>.  *See* Record at 22.  The plaintiff argues that the administrative law judge mischaracterized the evidence, omitting to note that he told Douglas that he was "*really struggling* b/c [because] everything is falling on his shoulders to do around the house." Statement of Errors at 15 (quoting Record at 641) (emphasis added).  He contends that Douglas's note, thus, actually supports his claim that he is not able to perform household chores. *See id*.  Nonetheless, even taking into account that the plaintiff told Douglas that he was struggling to do *all* household chores, the administrative law judge reasonably could have perceived this evidence as inconsistent with his contention that he could not perform even basic housekeeping chores.  Moreover, as the commissioner points out, *see* Opposition at 13, the plaintiff does not address other relevant findings by the administrative law judge; for example, that the plaintiff reported to Jones that he was skilled at cooking, *see* Record at 22, 614, and that he had very strong self-care/home-care skills, *see id.* at 19, 614.

### F.  Lack of Function-by-Function Assessment

The plaintiff finally asserts that the administrative law judge's mental RFC assessment fails to make the function-by-function assessment required by Social Security Ruling 96-8p.  *See* Statement of Errors at 17-18.  However, as the commissioner notes, *see* Opposition at 9-10, this court has held that reliance on a function-by-function assessment by an agency consultant suffices to satisfy this requirement, *see, e.g., Fernald v. Social Sec. Admin. Comm'r*, No. 1:11-cv-00248-NT, 2012 WL 1462036, at *4 (D. Me. Apr. 19, 2012) (rec. dec., *aff'd* May 14, 2012); *Hanson v. Social Sec. Admin. Comm'r*, No. 1:11-cv-00008-DBH, 2011 WL 6888642, at *2 (D. Me. Dec. 28, 2011) (rec. dec., *aff'd* Feb. 9, 2012), *aff'd*, 519 Fed. Appx. 696 (1st Cir. 2013).  Here, the

administrative law judge properly relied on the function-by-function assessments of Drs. Kang and Burkhart.[5]

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 19th day of October, 2014.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[5] As part of this point of error, the plaintiff argues that the administrative law judge failed to account for the full panoply of his limitations, including his asserted inability to interact appropriately with coworkers, accept instructions or criticism from supervisors, adapt to workplace changes, understand and carry out simple instructions, and sustain an ordinary routine without supervision. *See* Statement of Errors at 17. This amounts to a rehash of his previous arguments that the administrative law judge erred in giving great weight to the opinions of Drs. Kang and Burkhart and little weight to the opinion of Douglas and in reaching a negative credibility determination, which I found to be without merit for the reasons discussed above.